**LANGSTAFF v. LUCAS, Collector of Internal Revenue.**

(District Court, W. D. Kentucky. December 22, 1925.)

No. 1910.

**1. Internal revenue ⟨key⟩4—Regulation of Treasury Department, purporting to exempt income specifically taxed, void.**

Treasury Department cannot impose or exempt from income taxes, and regulations purporting to exempt from taxation income specifically taxed would be void.

**2. Internal revenue ⟨key⟩4—Government not estopped from asserting tax by erroneous interpretation of Revenue Act by Treasury Department.**

Any erroneous interpretation of revenue act by regulation of Treasury Department would not estop government from asserting tax on an income, though taxpayer had been misled by such interpretation, and by it induced to expose property to taxation.

**3. Partnership ⟨key⟩1—Partnership not an entity, distinct from its members.**

A partnership is neither in law nor in fact an entity, separate and distinct from its members, and cannot hold property as an entity distinct from its members.

**4. Internal revenue ⟨key⟩7—Stockholders receiving interest in partnership on dissolution of corporation held to have "received" taxable income; "derived."**

Where stockholders of corporation having an accumulated surplus agreed to dissolve, but to have assets transferred directly to a partnership composed of them, transaction *held* an exchange of corporate stock for its assets, which to extent of surplus constituted taxable income, under Revenue Act 1918, §§ 213, 214, 216 (Comp. St. Ann. Supp. 1919, §§ 6336⅛ff, 6336⅛g, 6336⅛h), notwithstanding Regulation 43, art. 1566; "derived," as used in section 213, being synonymous with "received."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Derive; Receive.]

**5. Internal revenue ⟨key⟩7—Surplus distributed to stockholders on dissolution of corporation held not "dividends."**

Where corporation having accumulated surplus dissolved, and transferred its assets to partnership composed of its former stockholders, *held*, interests in partnership received by stockholders were not, to extent of surplus, "dividends" deductible in computing normal tax, under Revenue Act 1918, § 216 (Comp. St. Ann. Supp. 1919, § 6336⅛h), in view of defini-

tion of "dividends" contained in section 201 (section 6336⅛b).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dividend.]

At Law. Action by George Langstaff against Robert H. Lucas, Collector of Internal Revenue. On demurrer to petition. Demurrer sustained.

Wheeler & Hughes, of Paducah, Ky., for Langstaff.

W. S. Ball, U. S. Atty., and Claude Hudgins, Asst. U. S. Atty., both of Louisville, Ky., for Lucas.

DAWSON, District Judge. Langstaff-Orm Manufacturing Company, prior to the 1st day of March, 1913, and from that date up to and including the 1st day of December, 1919, was a Kentucky corporation. The plaintiff, George Langstaff, and Augusta Langstaff, owned all the stock of this corporation, but for the purpose of complying with the law of Kentucky, which requires at least three persons to constitute a corporation, a small number of their shares stood in the names of the two other persons.

Between the 1st day of March, 1913, and December 1, 1919, this corporation had accumulated a surplus of $42,782.24, which it used in its business as a part of its capital assets. Shortly before the 1st of December, 1919, it was determined to liquidate the corporation and to transfer all of its assets, including the surplus, to a partnership, to be known as "Langstaff-Orm Lumber Company," the members of said partnership to be George Langstaff and Augusta Langstaff. It was agreed between these two owners of the stock of the corporation that the business of the corporation, after dissolution, should be continued in the name of the partnership, and that all the assets belonging to the corporation at the date of its dissolution, including the assets constituting the surplus, should be continued in use by said partnership; it being specifically agreed that no part of said surplus should be distributed in money or any other property to any of the stockholders in said corporation, or to either of the members of the proposed partnership, and that no member of the firm as an individual should exercise any dominion or control over said assets, nor should they be set aside on the books of the partnership to the credit of the individual members thereof, such agreement to continue until the firm should be dissolved. This agreement was afterwards reduced to writing. About December 1, 1919,

the corporation was regularly dissolved, and the partnership thereafter took possession of and continued to use as such the assets, including the surplus referred to, formerly belonging to the corporation.

The Commissioner of Internal Revenue took the view that this transaction, notwithstanding its form, was in fact a distribution of the assets of the corporation, including its surplus, to the stockholders, and to the extent of the surplus so distributed created taxable income for the year 1919. There was therefore assessed against the plaintiff, on account of his own half of said surplus, both a normal tax and a surtax, aggregating $3,886.68. This amount the plaintiff paid under protest, and thereafter, in regular course, applied to the Commissioner of Internal Revenue for a refund of same as taxes erroneously collected. His application was denied, and this suit was instituted against the collector of internal revenue for the district of Kentucky to recover said sum of $3,886.68, with interest from the 13th day of May, 1924, the date of said payment.

By an amended petition the plaintiff asserts that, even if the one-half of the surplus assignable to his stock in the corporation should be treated as taxable income accruing to him in the year 1919, yet it was income in the nature of a dividend, and therefore was not subject to the normal tax for that year, which amounted to $1,711.21 of the total, of $3,886.68 assessed against him, and that therefore in any event he is entitled to recover against the collector the sum of $1,711.21, with interest from the date of its payment. The case is submitted on demurrer to the petition as amended.

Plaintiff rests his contention that no tax was due upon said surplus upon the theory that upon the dissolution of the corporation in December, 1919, and the transfer of its assets, including its surplus, to the partnership, there was no such distribution to the individual stockholders, including the plaintiff, as would create taxable income. It is argued that the transfer from the corporation to the partnership was accomplished in such a way that the stockholders of the corporation had no more right to individually use the assets of the corporation after they had been transferred to the partnership than they had before; that the only result of the transaction was to exchange an indirect interest, which they held as stockholders, for a direct interest, which they held as partners.

In support of that contention the plaintiff relies upon article 1566 of Regulations 45, of the Treasury Department of the United States, contained in the 1919 edition of those regulations, which provides: "Where a corporation dissolves and distributes its assets in kind and not in cash, no taxable income is received from the transaction by its stockholders, because they merely exchange an indirect interest for a direct interest"— and upon article 53 of Regulations 45, 1919 edition, reading as follows: "Income which is credited to the account of or set apart for a taxpayer, and which may be drawn upon by him at any time, is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case, the income must be credited to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made. A book entry, if made, should indicate an absolute transfer from one account to another. If income is not credited, but is set apart, such income must be unqualifiedly subject to the demand of the taxpayer."

The plaintiff pleads that he and the other stockholders of the corporation knew of these regulations at the time they entered into the agreement to dissolve the corporation and transfer its assets to the partnership, and that the dissolution of the corporation and the transfer of its assets to the partnership was made in reliance upon these regulations, and would not have been made, but for them. It is insisted by the plaintiff that the Treasury Department had the power, under the law, to promulgate these two regulations, and that, even if such regulations were beyond the power of the Treasury Department to make, as insisted by the defense, in view of the fact that he was misled to his prejudice by them, the government is estopped to collect taxes on property exposed for taxation as the result of relying upon them.

[1] In dealing with the regulations relied upon by the plaintiff, it must be borne in mind that the Treasury Department was not and could not be authorized, by the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, § 6336⅛a et seq.), under which the tax here involved was collected, to impose income taxes nor to exempt from income taxation. That power is vested in the Congress, and was exercised by that body in the act of 1918. The only power given to the Treasury Department by that act, in respect of regulations, was to make all necessary regulations for carrying out the provisions of the act. Therefore it necessarily follows that any regulations of the Treasury Department which would exempt from taxation income

which the statute specifically taxes would be void.

[2] It must be conceded that, if the regulations referred to are to be construed as the plaintiff contends, and are not in conflict with the law, then the transfer of the corporate assets to the partnership did not result in any taxable income to the plaintiff. On the other hand, it would seem axiomatic that if, under the law, the transfer did result in taxable income to the plaintiff, any erroneous interpretation of the act by the Treasury Department would not estop the government from asserting the tax, even though the taxpayer may have been misled by such interpretation. He must have known that his tax liability was determined by the law, and not by what some administrative official thought was the law. We must therefore determine what constituted taxable income under the act of 1918. Section 213 (Comp. St. Ann. Supp. 1919, § 6336⅛ff) defines what is meant by gross income, section 214 (section 6336⅛g) sets out the deductions allowed in determining net income, and section 216 (section 6336⅛h) enumerates the credits allowed in computing the normal tax.

Section 213 reads, in part, as follows:

"For the purposes of this title (except as otherwise provided in section 233) the term 'gross income'—

"(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. The amount of all such items shall be included in the gross income for the taxable year *in which received by the taxpayer.* * * * *"

The word "derived," as used in the section, supra, is unquestionably synonymous with the word "received," and the latter part of the section clearly indicates that taxability is made dependent upon receipt by the taxpayer of the income sought to be taxed. So we must conclude that under the act all gains or profits *received* by the taxpayer constitute taxable income for the year in which such profits or gains are received. This much the plaintiff apparently concedes, but he contends that he did not receive any

part of the surplus of the corporation in 1919, in the sense that the word "receive" is used in the act, and he points to the partnership agreement heretofore referred to in support of his contention.

[3, 4] Plaintiff's position can be maintained only by disregarding the most elementary principles of partnership law. Unlike a corporation, a partnership is neither in law nor in fact an entity separate and distinct from its members. It exists and acts only through its members. There can be no such thing as either the receipt or the holding of property by a partnership, separate and distinct from its members. Whatever profit is made by a partnership is the property of the members. The act in question in this case strikingly illustrates the oneness of a partnership and its members, by providing that the income of all partnerships shall be taxed against the members thereof in proportion to their respective holdings in the partnership, and not against the partnership as such. Therefore, even had the corporation in this case, upon its dissolution, transferred its assets to the partnership, both in law and in fact it would have been a delivery and transfer of these assets to the members of the partnership in proportion to their holdings. The partners would have *received* the assets, including their portion of the surplus, because they would have become the actual, direct owners of such assets, and no more complete receipt of property can be imagined than to become the absolute owner thereof.

But as a matter of fact, as well as of law, if this distinction were important, the corporation did not transfer its assets to the partnership. The actual, legal mechanics of the transaction required the transfer of the assets to the stockholders of the corporation in proportion to their stock ownership, and they in turn pooled their property in a partnership venture, in accordance with an agreement theretofore made. When the corporation dissolved, it in effect bought up its own stock for retirement, paying to its stockholders in exchange therefor all of its assets; each stockholder receiving such a proportion of the total assets as his stock was of the total capital stock. Of these assets he became the actual owner, and to hold that by a partnership agreement he could forego for a time the full enjoyment of the property so received, and thereby avoid taxation for the year in which he became such owner, would be to exalt fiction over fact and to do violence to the plain terms of the statute. Therefore it seems clear to the court

that, when the corporation dissolved, the plaintiff, in law as well as in fact, exchanged his stock for its proportionate part of the corporate assets, and to the extent of the surplus so received by him he was subject to income taxation for the year 1919, and that, if the regulations relied upon by the plaintiff are to be construed as exempting such surplus from taxation, they are to that extent void.

[5] This leaves yet to be considered the contention of the plaintiff that the surplus so received by him was a "dividend," as that word is defined in section 201 of the act (Comp. St. Ann. Supp. 1919, § 6336⅛b), and under section 216 was not subject to the normal tax. Loosely speaking, the distribution to the stockholders of a corporation's assets, upon liquidation, might be termed a dividend; but this is not what is generally meant and understood by that word. As generally understood and used, a dividend is a return upon the stock of its stockholders, paid to them by a going corporation without reducing their stockholdings, leaving them in a position to enjoy future returns upon the same stock. Mr. Justice Pitney, in the case of Lynch v. Hornby, 247 U. S. 339, 38 S. Ct. 543, 62 L. Ed. 1149, T. D. 2731, in defining the word "dividend," as used in the act of 1913, which did not undertake to define the word, gives a good definition of the word as generally understood and used: "In short, the word 'dividends' was employed in the act as descriptive of one kind of gain to the individual stockholder; dividends being treated as the tangible and recurrent returns upon his stock, analogous to the interest and rent received upon other forms of invested capital." In other words, it is earnings paid to him by the corporation upon his invested capital therein, without wiping out his capital. On the other hand, when a solvent corporation dissolves and liquidates, it distributes to its stockholders, not only any earnings it may have on hand, but it also pays to them their invested capital, namely, the amount which they had paid in for their stock, thus wiping out their interest in the company. As heretofore suggested, the corporation in effect buys up and retires all of its outstanding stock.

An examination of section 201 of the act discloses that Congress had clearly in mind the distinction between a dividend, as generally understood, and a distribution in liquidation, and intended to preserve this distinction. Section 201 of the act, in part, is as follows: "*Dividends.* (a) The term 'dividend' when used in this title, except in paragraph (10) of subdivision (a) of section 234, means (1) any distribution made by a corporation, other than a personal service corporation, to its shareholders or members, whether in cash or in other property or in stock of the corporation, out of its earnings or profits accumulated since February 28, 1913, or (2) any such distribution made by a personal service corporation out of its earnings or profits accumulated since February 28, 1913, and prior to January 1, 1918. * * * (c) A dividend paid in stock of the corporation shall be considered income to the amount of the earnings or profits distributed. Amounts distributed in the liquidation of a corporation shall be treated as payments in exchange for stock or shares, and any gain or profit realized thereby shall be taxed to the distributee as other gains or profits."

This section strips distributions made to stockholders in liquidation of a corporation of all disguises and declares that they shall be considered for what they in effect are— purchases of all their outstanding stock by the liquidating corporations, and not dividends as generally understood, and as defined in section 201, subsection (a), and as used in section 216. So construed, subsection (c) of section 201 puts the stockholder who holds his stock up to the time of liquidation, and then in effect sells it to the corporation, upon exactly the same footing as the stockholder who sells his stock to another during the operating life of the corporation. The latter unquestionably, under the act of 1918, was required to pay both the normal and surtax upon any profit realized by him in the transaction. That is all the former was required to do under the act as here construed.

For the reasons stated, the court is forced to the conclusion that it was not intended by Congress that so-called liquidating dividends, to the extent of the profit received, should escape the normal tax. It necessarily follows that the court is of the opinion that the plaintiff has stated no cause of action, and the demurrer to the petition will be sustained.