344

HELVERING, Com'r of Internal Revenue,
v. SYNDICATE VARIETIES, Limited.

No. 8458.

United States Court of Appeals
District of Columbia.

Argued Dec. 7, 1943.

Decided Jan. 24, 1944.

Mr. Joseph M. Jones, Special Assistant to the Attorney General, with whom Messrs. Samuel O. Clark, Jr., Assistant Attorney General, Sewall Key and J. Louis Monarch, Special Assistants to the Attorney General, were on the brief, for petitioner. Messrs. J. P. Wenchel, Chief Counsel, and Charles E. Lowery, Special Attorney, Bureau of Internal Revenue, both of Washington, D. C., also entered appearances for petitioner.

Mr. Henry Ravenel, of Washington, D. C., with whom Messrs. Lawrence A. Baker, of Washington, D. C., and John F. McCabe, of New York City, were on the brief, for respondent.

Before MILLER, EDGERTON, Associate Justices, and DOBIE,* Circuit Judge.

DOBIE, Circuit Judge.

The facts in this case were stipulated as follows:

"1. Syndicate Varieties (hereinafter called taxpayer), is a corporation organized under the laws of Great Britain with its principal office at Cranbourn Mansions, Cranbourn, London, W. C. 2, England. During the year 1936 it did not have an office or place of business nor was it engaged in trade or business within the United States.

"2. During the last half of the year

* Sitting by assignment of the Chief Justice of the United States, pursuant to the provisions of the Act of December 29, 1942, entitled "An Act to amend the Judicial Code to authorize the Chief Justice of the United States to assign circuit judges to temporary duty in circuits other than their own." 56 Stat. 1094, 28 U.S.C.A. §§ 17–20, 22, 23.

1936 more than 50% in value of taxpayer's outstanding stock was owned by five individuals. All of taxpayer's stockholders were nonresident aliens.

"3. At the beginning of the year 1936 taxpayer was the owner of 7,414 shares of the capital stock of a domestic corporation known as Circle Dramatics, Inc. On or about December 24, 1936, taxpayer surrendered its stockholdings for cancellation and said Circle Dramatics, Inc., was completely liquidated, with the result that there was received by the taxpayer in 1936 securities, copyrights, cash and accounts receivable of the value of $213,120.25. The cost of the stock of Circle Dramatics, Inc., owned by taxpayer was $74,060.00. The taxpayer's gain in 1936 on liquidation of Circle Dramatics, Inc., was $139,060.25.

"4. During the year 1936 taxpayer did not receive from sources within the United States any profit other than the profit referred to in paragraph 3 hereinabove.

"5. Taxpayer has not filed Federal income, excess-profits tax or personal holding company tax returns for the year 1936."

On the basis of the foregoing facts, the Commissioner of Internal Revenue determined a deficiency against the taxpayer in personal holding company surtax in the amount of $20,949.50, and a 25% delinquency penalty of $5,237.38 for the calendar year 1936. This action was reversed by the United States Board of Tax Appeals in an unreported memorandum opinion. The Commissioner has duly appealed to this Court. The only question presented for our consideration is one of statutory construction, namely, whether a gain derived from the receipt of final liquidating dividends constituted a "sale" of stock within the meaning of Section 351(b) (1) (A) of the Revenue Act of 1936, 26 U.S. C.A. Int.Rev.Acts, page 936.

The relevant statutes and treasury regulations are as follows:

"Revenue Act of 1936, c. 690, 49 Stat. 1648:

"Sec. 115. Distributions by Corporations.

*　　*　　*　　*　　*

"(c) *Distributions in Liquidation.*— Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock.

*　　*　　*　　*　　*

"Sec. 351. Surtax on Personal Holding Companies.

"(a) *Imposition of Tax.*—There shall be levied, collected and paid, for each taxable year * * *, upon the undistributed adjusted net income of every personal holding company a surtax equal to the sum of the following:

[Tables of rates omitted.]

*　　*　　*　　*　　*

"(b) *Definitions.*—As used in this title—

"(1) The term 'personal holding company' means any corporation * * * if— (A) at least 80 per centum of its gross income for the taxable year is derived from royalties, dividends, interest, annuities, and (except in the case of regular dealers in stock or securities) gains from the sale of stock or securities, and (B) at any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals. * * *

*　　*　　*　　*　　*

"(3) The term 'adjusted net income' means the net income minus the sum of:

*　　*　　*　　*　　*

"(C) Losses from sales or exchanges of capital assets which are disallowed as a deduction by section 117(d).

"(4) The terms used in this section shall have the same meaning as when used in Title I."

"Treasury Regulations 94, promulgated under the Revenue Act of 1936:

"Art. 351–2. *Classification of a personal holding company.*—* * *

"It is the nature of the gross income and the ownership of the outstanding stock which determine the classification as a personal holding company, and the several conditions with respect to both must be satisfied to bring a corporation within the classification. * * *

*　　*　　*　　*　　*

"Gross income is not synonymous with gross receipts. For example, in the case of a sale or exchange of property, it includes only the excess of the amount realized therefrom over the adjusted basis provided for in section 113(b). It does not include gains which are not recognized under section 112(b). * *, *

*　　*　　*　　*　　*

"(5) *Gains from the sale of stock or securities.*—The term 'gains from the sale of stock or securities' applies to all gains (including gains from liquidating dividends and other distributions from capital) from the sale or exchange of stock or securities includible in gross income under Title I. * * *"

■ Although the taxpayer is a non-resident foreign corporation whose stockholders are all nonresident aliens, it is, nonetheless, within the statutory definition of "any corporation" as this term is used in section 351(b) (1) of the Revenue Act of 1936. Fides, A. G. v. Commissioner of Internal Revenue, 4 Cir., 137 F.2d 731, certiorari denied 64 S.Ct. 266, 88 L.Ed. ——. The Board below recognized and applied this principle but it held that the taxpayer was not subject to the tax in question since it was not a "personal holding company" within the meaning of the Act. The reason assigned by the Board for its decision was that the taxpayer's gain of $139,060.25 did not constitute "gains from the sale of stock or securities" as specified by section 351(b) (1) (A) of the Revenue Act of 1936. In this respect we think the Board below fell into error.

Article 351–2 of Treasury Regulation 94, supra, specifically covers the case since it provides that the term "gains from the sale of stock or securities" applies to all gains from the *sale* or *exchange* of stock or securities, including gains arising from liquidating dividends. The Circuit Court of Appeals for the Eighth Circuit (with Circuit Judge Woodrough dissenting) has held this regulation invalid on the ground that it was contrary to section 115(c) of Title I of the Revenue Act of 1936. Helvering v. Rebsamen Motors, Inc., 8 Cir., 128 F.2d 584.

In the Rebsamen case, supra, the taxpayer was a domestic corporation and the applicable statute was section 351 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev. Acts, page 757. However, the material provisions of sections 351 of the 1934 and the 1936 Acts are identical and the Board below consequently accepted the Rebsamen case as conclusive upon the point.

The rationale of the Rebsamen case was to the effect that while section 115(c) might justify the designation of a distribution of liquidating dividend as an exchange, it did not warrant the extension made in the regulations of the term "sale" in section 351(b) (1) (A) to include ex-changes. Thus, a contrary decision would have been reached had Congress used the phrase "sale or exchange" in the first part of section 351, as it does in a subsequent portion of the same section. To us, this omission was nothing more than an inadvertent and immaterial oversight on the part of Congress.

It is important to note, at the outset, that section 115(c) was not addressed to the question of taxing holding companies. It was concerned only with placing liquidating dividends in a different category from ordinary dividends. It was therefore a matter of indifference, in this connection, whether liquidating dividends were called exchanges or sales. Moreover, the legislative history of section 115 indicates that Congress intended to treat liquidating dividends as a sale of stock rather than as a dividend. H. Rep. No. 179, 68th Congress, 1st Session, page 11 (1939—1 Cum. Bull. (Part 2) 241, 249) ; S.Rep. No. 398, 68th Congress, 1st Session, page 11 (1939—1 Cum.Bull. (Part 2) 266, 274).

The relevant Committee Reports also show that the terms "sale" and "exchange" were used interchangeably and there seems to have been no intention on the part of Congress to spell out a distinction between these two terms as they are used in the Act. Indeed, the Supreme Court itself has attached no special significance to the fact that section 115(c) expressly refers to the term "exchange" rather than the more generally used term "sale or exchange." White v. United States, 305 U.S. 281, 59 S. Ct. 179, 83 L.Ed. 172; Hellmich v. Hellman, 276 U.S. 233, 48 S.Ct. 244, 72 L.Ed. 544, 56 A.L.R. 379.

■ It is true that section 351(b) (1) (A) speaks only of "gains from the sale of stock." Yet it is obvious that Congress was here concerned primarily with the essential nature of the gain rather than the particular outward form of any given transaction. Thus, if a taxpayer designated as "compensation" income which in fact was a "dividend", no one would hesitate to include it as income of a personal holding company. Similarly, in the instant case, while the taxpayer received what was termed a liquidating dividend, it was tantamount, for tax purposes, to a sale of the stock in question, since Congress clearly meant to include within the ambit of the statute not only an ordinary sale but also any other distribution of stock which would result in a tangible gain. We are

here interested in legal realities and not concerned with the subtle nuances of academic semantics. The word "sale" was not used by Congress in a narrow restricted sense, it was rather used to define, broadly, income other than operating income.

We feel that this view is consistent with the avowed purpose of Congress by first enacting in 1934 the personal holding company surtax, with the intention of eliminating the vice of the incorporated pocketbook by imposing an additional tax on non-operating income, i. e., dividends, interest, and capital gains attributable to securities held by such personal holding companies. If our construction kills the technical letter of the statute, it breathes life into the spirit of the Act. Cf. Dalany v. Moraitis, 4 Cir., 136 F.2d 129. We see no utility in an otherwise atrophied expression of Congress, because—"Unless gains derived by pocketbook corporations from complete liquidation of stocks owned by them are treated as gains derived from sale of the stock, the income Congress intends to tax may be passed by such liquidation from one pocketbook corporation to another and the very tax avoidance which Congress expressed its intention to prevent is facilitated." Woodrough, J., dissenting in Helvering v. Rebsamen Motors, 8 Cir., 128 F. 2d 584, 588.

We heartily agree with the Supreme Court that "the term sale may have many meanings, depending on the context * * *. The meaning here depends on the purpose with which it is used in the statute and the legislative history of that use." Helvering v. Hammel, 311 U.S. 504, 507, 61 S.Ct. 368, 369, 85 L.Ed. 303, 131 A.L.R. 1481. Cf. Restatement of Property, Section 113; H.Rep.No. 1546, 75th Cong., 1st Session, page 4 (1939—1 Cum.Bull. (Part 2) 704, 706).

■■ Accordingly, we refuse to defeat the underlying purpose of Congress in enacting the statute by giving a cloistered, pedantic definition to the term "sale" as applied to the instant case. A sale of stock should be construed to cover any transaction whereby the stock is permanently parted with for a consideration, and the gain is definitely established for tax purposes. As stated by dissenting Judge Woodrough in the Rebsamen case, supra: "The context leaves no doubt in my mind that any of the innumerable modes of extinguishing the ownership of one and vesting it in another for a price falls within the broad scope of the word 'sale' in the definition * * *."

Under the Statute of Frauds (American Sales Act § 4, based on section 17 of the English Statute of Frauds), "it is well settled that a contract of exchange or barter is within the statute." 1 Williston on Sales (2d Edition) § 56, page 94. The American Sales Act, by express terms, § 9(2), includes barter or exchange within the provisions of the Act. And, again, Williston (Williston on Sales, 2d Edition, § 170, page 316) writes: "In the common law, however, there is no different rule applicable to a contract of sale from that which is applicable to a contract of exchange. It would seem unfortunate in codifying the law of sales to exclude contracts of exchange, which turn on precisely the same principles and which differ, if at all, only in name. The only doubtful point indeed, in regard to exchanges, is whether they differ even in that respect * * * So in the construction of other statutes the word 'sale' has been held to include transactions for other than a money price." And, in Commonwealth v. Clark, 14 Gray 367, 372, Justice Bigelow, speaking for the Supreme Judicial Court of Massachusetts, aptly stated: "The distinction between a sale and exchange of property is rather one of shadow than of substance. In both cases the title to property is absolutely transferred, and the same rules of law are applicable to the transaction, whether the consideration of the contract is money or by way of barter."

For the reasons assigned, the decision below is reversed.

Reversed.