COMMISSIONER OF INTERNAL REVENUE v. CALLAHAN REALTY CORPORATION.

No. 298.

Circuit Court of Appeals, Second Circuit.

June 8, 1944.

Samuel O. Clark, Jr., Asst. Atty. Gen. (Sewall Key, Robert N. Anderson, and Muriel Paul, Sp. Assts. to Atty. Gen., of counsel), for petitioner.

Hugh Satterlee, I. Herman Sher, and Martin Roeder, all of New York City, for respondent.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The respondent was concededly a personal holding company in 1935 subject to surtaxes imposed for that year under § 351 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, p. 757, and required to file a personal holding company return provided a profit of $10,467 it received in that period upon the retirement of mortgage bonds it owned is a gain "from the sale of stock or securities" within the meaning of subdivision (b) of the above statute. The tax court held that it was not a personal holding company and the commissioner brought this petition to review that decision.

Respondent is a New York corporation which acquired bonds of the 2480 Broadway Corporation at no cost and its surrender of them for retirement in 1935 resulted in a net profit as stated. Its gross income for that year was made up of the above amount, and $2,813.52 of interest and profit from the sale of other bonds. This was all included in its return of income for that year. It filed no personal holding company return, however, and the deficiency determined was entirely because of the surtaxes for which it was taxable only if it was a personal holding company Whether or not it was is the sole issue.

Sec. 351(b) (1) of Title IA of the 1934 Act defines a personal holding company, so far as here pertinent, as any corporation, whose stock is held in accordance with (b) (1) (B) of the section, and which derives at least 80 per centum of its gross income from gains from the sale of stock or securities. T. R. Art. 351–2 treats the term "gains from the sale of stock or securities" in § 351 as though it meant all gains from the "sale or exchange of stock or securities includible in gross income under Title I." If the regulation did not go beyond the statute in construing "sale" to mean "sale or exchange" the commissioner correctly determined that the respondent was subject to a penalty for its failure to file a personal holding company surtax return and that it was liable for the surtax as computed. This is so because § 117(f) of the 1934 Act, 26 U.S.C.A. Int.Rev.Acts, page 708, provides that amounts received by the holder upon the retirement of bonds "shall be considered as amounts received in exchange therefor." Consequently such amounts are includible in gross income for tax purposes under Title I, and if this retirement profit is also a gain to be recognized under § 351 as the regulation provides, the respondent was a personal holding company in 1935.

The commissioner fortifies his contention that the regulation is valid by pointing out that in the computation of its adjusted net income a personal holding company is allowed under § 351(b) (3) (C) of the 1934 Act to deduct losses from sales or exchanges of capital assets which are disallowed as a deduction by § 117(d), and showing that the statute in subdivision (b) (4) provides that the terms used in Title IA shall have the same meaning as when used in Title I. From all this he reaches the conclusion that this bond retirement income which the respondent received was the kind of income which

Congress used to establish one of the factors in the light of which its status as a personal holding company was to be determined. He insists that the word "sale" in that part of the statute where the kind of corporation which may take the special deduction under subdivision (b) (3) (C) is defined should therefore be construed broadly enough to include an exchange in order that the statute will be a balanced one in that respect and that what he insists was the intention of Congress may be carried out. His position is supported by Helvering v. Syndicate Varieties, Ltd., App.D.C., 140 F.2d 344. It is, however, in conflict with Helvering v. Rebsamen Motors, Inc., 8 Cir., 128 F. 2d 584.

We shall not attempt to try to decide why Congress saw fit in Title IA of the 1934 Act, which was a new statute, to use the words "gains from the sale of stock or securities" in § 351(b) (1) (A) in defining a personal holding company and the words "losses from sales or exchanges of capital assets" in subdivision (b) (3) (C) of the same section in providing for deductions which such a personal holding company might take in computing its adjusted net income. The legislative history of Title IA sheds little light on that subject. Were there nothing more we might be persuaded that the commissioner had taken the right view and that the regulation is valid. But there is more and it seems to us very significant.

Congress in 1937 amended Title IA and in place of the word "sale" in § 351(b) (1) (A) used the words "sale or exchange." See § 1 of the 1937 Act, amending § 353(b) of the 1936 Act, 50 Stat. 814, 26 U.S.C.A. Int.Rev.Code, § 502(b). While it is true that the report of the Committee on Ways and Means calls this a clarifying amendment, it is a fact that § 3 of the 1937 Act makes the amendment operative only after December 31, 1936, 26 U.S.C.A. Int.Rev.Acts, page 992. This limitation upon the effect of the amendment seems to us to show that it plainly was not made merely to clarify existing law. Had the intent of Congress been only to state more clearly what the statute had meant from its original enactment, there would have been no point in limiting the effect of the restatement to the period following December 31, 1936. We think such a limitation shows that it did realize that the amendment enlarged the scope of the

original enactment and made sure that taxpayers would understand that it was not to be applied retroactively. It is reasonable to believe that Congress was unwilling to impose harsh burdens upon taxpayers based only upon doubtful interpretation of so drastic a statute and preferred to make its meaning clear before it should have such an effect.

The amendment was not considered in Helvering v. Syndicate Varieties, Ltd., supra. We think it now tips the scales in favor of the respondent and leads to the conclusion that the regulation was a broadening of the original statute involving legislation beyond the power of the treasury. Until Congress itself amended the statute the regulation went beyond its scope and was invalid. The decision of the Tax Court was therefore right. Compare, Helvering v. Rebsamen Motors, Inc., supra.

Affirmed.