BRAMLETTE BUILDING CORPORATION, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5920–66.    Filed May 5, 1969.

*John M. Smith*, for the petitioner.
*Harold L. Cook*, for the respondent.

OPINION

1. *Termination of Section 1372 Election.*—The first issue is whether respondent correctly terminated petitioner's subchapter S election. See *Max Feingold*, 49 T.C. 461 (1968).

Section 1372(e)(5), as applicable to the years in controversy, provided:

SEC. 1372.   ELECTION BY SMALL BUSINESS CORPORATION.

(e) Termination.—

\*        \*        \*        \*        \*        \*        \*

(5) PERSONAL HOLDING COMPANY INCOME.—An election under subsection (a) made by a small business corporation shall terminate if, for any taxable year of the corporation for which the election is in effect, such corporation has gross receipts more than 20 percent of which is derived from royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities (gross receipts from such sales or exchanges being taken into account for purposes of this paragraph only to the extent of gains therefrom). Such termination shall be effective for the taxable year of the corporation in which it has gross receipts of such amount, and for all succeeding taxable years of the corporation.

Section 1.1372–4(b)(5)(iv), Income Tax Regs., then provided as follows:

(iv) *Rents.* The term "rents" as used in section 1372(e)(5) means amounts received for the use of, or right to use, property (whether real or personal) of the corporation, whether or not such amounts constitute 50 percent or more of the gross income of the corporation for the taxable year. *The term "rents" does not include payments for the use or occupancy of rooms or other space where significant services are also rendered to the occupant, such as for the use or occupancy of rooms or other quarters in hotels, boarding houses, or apartment houses furnishing hotel services, or in tourist homes, motor courts, or motels. Generally, services are considered rendered to the occupant if they are primarily for his convenience and are other than those usually or customarily rendered in connection with the rental of rooms or other space for occupancy only.* The supplying of maid service, for example, constitutes such services; whereas the furnishing of heat and light, the cleaning of public entrances, exits, stairways and lobbies, the collection of trash, etc., are not considered as services rendered to the occupant. *Payments for the use or occupancy* of entire private residences or living quarters in duplex or multiple housing units, *of offices in an office building, etc., are generally "rents" under section 1372(e)(5).* Payments for the parking of automobiles ordinarily do not constitute rents. Payments for the warehousing of goods or for the use of personal property do not constitute rents if significant services are rendered in connection with such payments. [Emphasis added.]

Petitioner points out that neither the statute nor the regulations precludes a corporation which owns an office building and rents space therein from making an election under section 1372(a). This is true, but as a practical matter the gross receipts requirement of section 1372(e)(5) makes it very difficult for a corporation whose only asset is an office building to qualify for subchapter S treatment.[2] Petitioner

---

[2] The purpose of sec. 1372 has been described as follows:
When the "passthrough" type of tax treatment was provided for corporations, Congress decided to limit the availability of this treatment to small businesses *actively engaged in trades or businesses.* Therefore, it denied this treatment to corporations with large amounts of *passive income.* \* \* \* [Emphasis added. S. Rept. No. 1007, 89th Cong., 2d Sess., p. 8 (1966), 1966–1 C.B. 532; H. Rept. No. 1238, 89th Cong., 2d Sess., p. 8 (1966).]

does not challenge the validity of the regulations, yet it ignores the sentence therein which provides: "Payments for the use or occupancy * * * of offices in an office building * * * are generally 'rents' under section 1372(e)(5)." By ignoring this provision, we can only infer that petitioner believes that in some way it may either vanish or is qualified by the language that payments for the use of property are rents if "significant services" are rendered to the occupant.

Section 1.1372–4(b)(5)(iv), Income Tax Regs., does not lay down a hard-and-fast rule that *all* payments for the use of offices in an office building are rents. But it does provide that such payments are "generally" rents. This necessarily implies that there can be certain extraordinary or special situations in which the described payments are not to be considered "rents" for purposes of section 1372 and suggests that this particular provision ought to be read in light of the prior provision which excludes from the definition of "rents" those payments for the use of property, including offices in an office building, if "significant services" are rendered primarily for the convenience of the occupant and are other than those "usually or customarily" rendered in connection with the rental of rooms or other space for occupancy only.

Petitioner contends that, while its gross receipts represent payments for the use or right to use its property, they are not "rents" within the meaning of section 1372(e)(5) because it rendered "significant services" which were primarily for the convenience of the tenants and were other than those "usually or customarily" rendered in connection with the rental of space in an office building. Respondent counters with the argument that petitioner's election was properly terminated because more than 20 percent of its gross receipts constituted rents, i.e., payments for the use or occupancy of petitioner's property. He further argues that petitioner's services were those "usually or customarily rendered" to office building occupants, and, in any event, that the services were not "significant."

We are thus confronted with these questions: Were the services provided by petitioner other than those "usually or customarily rendered" in connection with the rental of office space for occupancy only? If so, were the services "significant" within the purview of section 1.1372–4(b)(5)(iv)?

Petitioner maintains that it provided a barbershop, drugstore, and lunch counter for the convenience of the tenants and that its efforts in this respect constituted services not usually furnished to tenants. Petitioner provided these facilities for the tenants only in the sense that it leased space to various individuals who operated the barbershop, drugstore, and lunch counter. In our opinion the mere leasing of space to a third party, who performs services for the other tenants

of the office building, does not constitute the providing of services within the meaning of the regulations. Nor do the services which may have been rendered to the tenants of the office building by the operators of the barbershop, drugstore, and lunch counter qualify as services rendered by petitioner. It is perfectly clear that no part of the amounts paid petitioner for the use of its property was for its efforts in obtaining the barber, druggist, and lunch counter operator as tenants, or for the services rendered by such tenants.

Similarly, the providing of the storage area and the lounge for the convenience of some of the tenants does not constitute the "services" contemplated by the regulations for the simple reason that no services were rendered in connection with such facilities.

The only services rendered by petitioner to its tenants were those performed by the three maids, two porters, two elevator operators, the maintenance engineer, and the night watchman. Petitioner has failed to establish that the services rendered by these employees were any different than those generally provided in connection with the rental of offices in an office building. We think they are essentially the same as those customarily furnished to tenants of an office building. On cross-examination petitioner's president admitted as much:

Q. [By respondent's counsel.] Now in connection with the maids, porters, building engineers, elevator operators, and these other people surrounding the building, aren't those regular services performed by most buildings, office buildings? I mean, don't they generally have them?
A. [By Joseph.] I should think so.

The services rendered in conjunction with the remodeling and painting of portions of the building were no different than those normally required to maintain a building in good rental condition.

Of all the services rendered by petitioner only one might be deemed to qualify as a service other than those "usually or customarily" rendered in connection with the rental of office space, and that is the service provided by the maintenance engineer in repairing machines, furniture, and furnishings belonging to the tenants. But even as to this service, petitioner has provided us with no evidence to show whether it was significant. The record is silent as to how much time the maintenance engineer spent repairing the tenants' machines or furniture or how many tenants availed themselves of such services. In all probability they were insignificant because the maintenance engineer testified that he made such repairs only "when he had time." And, in view of his other duties relating to the air conditioning, the heating, and the electrical equipment of the building, the inference we draw is that he had little time to devote to such repair services.

All in all, we conclude that the services provided by petitioner were those "usually or customarily" rendered in connection with the

rental of office space. Therefore, except for the repair services, we need not determine whether the others were "significant" within the meaning of the regulations.

We hold that respondent properly terminated petitioner's election under section 1372(e)(5) since more than 20 percent of its gross receipts was from "rents."

2. *Rental Income From Parking Lot.*—Petitioner claims that the rental income of $2,670 in 1963 and $2,680 in 1964 received from the parking lot was rent from real property belonging to Joseph in his individual capacity and was included in its gross income by mistake. Respondent, on the other hand, argues that petitioner received the rental income from the parking lot under a claim of right without any restriction as to its use and that it is includable in its gross income at the time of receipt under the rule of *North American Oil Consolidated* v. *Burnet,* 286 U.S. 417 (1932). We agree with respondent.

In the *North American* case the Supreme Court held that funds received by a taxpayer under a claim of right and without restriction as to their disposition are includable in taxable income at the time of receipt, even though repayment of part or all of the funds may be required in a later year. "There is a claim of right when funds are received and treated by a taxpayer as belonging to him." *Healy* v. *Commissioner,* 345 U.S. 278, 282 (1953). The evidence in this case compels the conclusion that petitioner received and treated the rental income from the parking lot as its own. It collected and deposited the income in its bank account; it never set up an account on its books to indicate a liability to Joseph from such income; it used the income without restriction in its corporate business; and it reported the amounts received as its income on its Federal income tax returns from 1957 through 1967.

Although petitioner filed amended returns on October 11, 1968, indicating that the $2,670 and the $2,680 had been erroneously included in its income for the years 1963 and 1964, it offered no evidence that it has paid Joseph the amounts allegedly reported by mistake, or that it has established an account on its books to reflect an obligation for these amounts to Joseph. Petitioner's contention that the income was included in its gross income by mistake does not alter the fact that it received the rental income under a claim of right without restriction as to its disposition. Nor is it material that Joseph held legal title to the parking lot. We believe the petitioner received the rental income in 1963 and 1964 from the parking lot under a claim of right and properly included it in its income. "A mistaken claim is nonetheless a claim." *Healy* v. *Commissioner, supra* at 282.

3. *Claimed Salary Deduction.*—There is no merit to petitioner's contention that it is entitled to deduct $8,160 and $7,200 as Joseph's salary in 1963 and 1964. Its reliance on *Walter J. Roob*, 50 T.C. 891 (1968), is entirely misplaced. Section 1.461–1(a)(1), Income Tax Regs., provides that, as to taxpayers using the cash receipts and disbursements method of accounting, "amounts representing allowable deductions shall, as a general rule, be taken into account for the taxable year in which paid." The record herein shows that petitioner is a cash basis taxpayer and that during the years 1963 and 1964 it paid no salary to Joseph. Accordingly, section 1.461–1(a)(1) precludes petitioner from deducting any amount as salary from its gross income for those years.

*Decision will be entered for the respondent.*