LANSING BROADCASTING COMPANY, PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 3711–67. Filed May 20, 1969.

*Frank H. Boyer*, for the petitioner.
*Chauncey W. Tuttle, Jr.*, for the respondent.

#### OPINION

FEATHERSTON, *Judge:* Respondent determined deficiencies in petitioner's income taxes as follows:

| Year | Amount |
| --- | --- |
| 1962 | $129,104.09 |
| 1963 | 95,196.52 |
| 1964 | 55,449.66 |

The sole question is whether more than 20 percent of petitioner's gross receipts in 1962 constituted "personal holding company income" within the meaning of section 1372(e)(5),[1] with the result that petitioner's status as a "subchapter S corporation" terminated in that year. The answer depends primarily upon whether, under that section, the receipt by petitioner in 1962 of one of a series of distributions in complete liquidation of another corporation constituted "gross receipts * * * derived from * * * sales or exchanges of stock or securities."

All the facts have been stipulated.

Petitioner, a corporation organized under the laws of the State of Michigan, had its principal place of business at 601 Townsend Avenue, Lansing, Mich., at the time the petition was filed. It is engaged in the business of operating a commercial radio-broadcasting station under the call letters WILS. Petitioner filed its income tax return for 1962 on the basis of a calendar year, using the accrual method of accounting.

On December 1, 1958, petitioner elected, in accordance with the provisions of section 1372(a), not to be subject to the corporate in-

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

come tax for the year 1958,[2] and met all the requirements of that section. From January 1, 1958, through December 31, 1964, this election was not terminated by formal revocation or through the addition of new shareholders who failed to consent to the election. For each of the years 1958 through 1964, petitioner filed a Form 1120–S, U.S. Small Business Corporation Return of Income, with the district director in Detroit, Mich.

During 1962 petitioner owned 53.625 percent, 21,450 shares, of the stock of Chief Pontiac Broadcasting Co. (hereinafter Chief Pontiac), with a cost basis of $21,450. Pursuant to a plan of complete liquidation adopted in accordance with the provisions of section 337, Chief Pontiac sold substantially all of its assets for cash on October 15, 1962, and thereafter distributed its cash and remaining assets to its shareholders in complete liquidation. Petitioner received cash liquidating distributions of $187,687.50 on October 19, 1962, $32,175 on April 10, 1963, and $13,541.72 on May 28, 1963. At the time of the final liquidating distribution petitioner surrendered its Chief Pontiac stock, and, on May 10, 1963, Chief Pontiac filed a certificate of dissolution with the Michigan Corporation and Securities Commission.

The return filed by petitioner for 1962 reported gross receipts and other income as follows:

| | |
|---|---|
| Gross receipts | $569,048.19 |
| Interest on U.S. obligations | 5,552.59 |
| Rent | 1,689.10 |
| Net long-term capital gain | 166,237.50 |
| Other income | 8,971.04 |
| Total income | 751,498.42 |

The net long-term capital gain of $166,237.50 represented the liquidating distribution received from Chief Pontiac adjusted for the stock's cost basis of $21,450.

Paragraph (5) of section 1372(e), as it stood in 1962,[3] provided that an election under section 1372(a) would be terminated if the electing

---

[2] Under sec. 1372(c)(2)(A), an election made within the 90-day period beginning on the day after the date of enactment (Sept. 2, 1958) of subch. S applied to the electing corporation's first taxable year beginning after Dec. 31, 1957.

[3] SEC. 1372. ELECTION BY SMALL BUSINESS CORPORATION.

(e) TERMINATION.—

\* \* \* \* \* \* \*

(5) PERSONAL HOLDING COMPANY INCOME.—An election under subsection (a) made by a small business corporation shall terminate if, for any taxable year of the corporation for which the election is in effect, such corporation has gross receipts more than 20 percent of which is derived from royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities (gross receipts from such sales or exchanges being taken into account for purposes of this paragraph only to the extent of gains therefrom). Such termination shall be effective for the taxable year of the corporation in which it has gross receipts of such amount, and for all succeeding taxable years of the corporation.

corporation had gross receipts of which more than 20 percent was derived "from royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities (gross receipts from such sales or exchanges being taken into account for purposes of this paragraph only to the extent of gains therefrom)." Petitioner's gain from the liquidation of Chief Pontiac plus its interest and rental income constituted over 20 percent of its gross receipts in 1962. Therefore, if such gain was derived from the sale or exchange of stock, within the meaning of section 1372(e)(5), petitioner's subchapter S status terminated as of January 1, 1962. If not, respondent erred in determining the disputed deficiencies.

To support his determination that petitioner's election terminated as of January 1, 1962, respondent relies upon section 331(a)(1), which provides that "Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock." Respondent argues that this section requires that petitioner's gain from the liquidation of Chief Pontiac be included, as gain derived from an exchange of stock, in making the computation of gross receipts under section 1372(e)(5). Alternatively, respondent contends that if the Chief Pontiac transaction is not an exchange, the liquidating distribution is a dividend, which is also "personal holding company income."

Petitioner urges us to interpret section 1372(e)(5) literally—without regard to section 331(a)(1)—to limit it to *pure* sales and *pure* exchanges, and thus to hold that petitioner's receipts from the liquidation of Chief Pontiac were not gains from the sale or exchange of stock. Petitioner contends that these receipts also were not dividends, since section 331(b)[4] expressly provides that section 301, relating to the effect of corporate distributions on the taxable income of shareholders, shall not apply to distributions in partial or complete liquidation of a corporation. Thus, petitioner would have us hold that the Chief Pontiac distributions were neither gains from the sale or exchange of stock nor dividends, but rather were payments in satisfaction of petitioner's right, possessed through ownership of stock, to participate in Chief Pontiac's assets remaining after corporate debts were satisfied. Cf. *C. M. Menzies, Inc.*, 34 B.T.A. 163, 168 (1936).

Quite apart from petitioner's inconsistency in contending that section 331(b), but not section 331(a)(1), should be referred to in construing section 1372(e)(5), the argument that the last section's use of

---

[4] SEC. 331. GAIN OR LOSS TO SHAREHOLDERS IN CORPORATE LIQUIDATIONS.

(b) NONAPPLICATION OF SECTION 301.—Section 301 (relating to effects on shareholder of distributions of property) shall not apply to any distribution of property in partial or complete liquidation.

the phrase "sales or exchanges of stock" does not encompass corporate liquidating distributions to shareholders cannot be sustained.

Recognizing that the phrase "sales or exchanges of stock" should be construed in harmony with the legislative purpose, cf. *Helvering v. Hammel*, 311 U.S. 504 (1941), we direct our attention to subchapter S. Although section 1372(a) permits a corporation to elect "not to be subject to the taxes imposed" by chapter 1 of the Code, an electing corporation's taxable income, capital gain or loss, earnings and profits, and net operating losses must, nevertheless, be computed in order to determine the tax liability of the shareholders. Secs. 1372, 1373, 1374, 1375, and 1377. Subject to certain exceptions not material here, the taxable income of an electing corporation "is computed in the same manner that it would have been had no election been made." Secs. 1.1372–1(c)(1) and 1.1373–1(c), Income Tax Regs. Indeed, regulations section 1.1372–1(c) provides that "To the extent that other provisions of chapter 1 of the Code [which includes section 331(a)(1)] are not inconsistent with those under subchapter S of such chapter and the regulations thereunder, such provisions will apply with respect to both the electing small business corporation and its shareholders in the same manner that they would apply had no election been made." See also sec. 6037.[5]

The question thus becomes whether the provisions of section 331(a) (1) are inconsistent with those of subchapter S. In our view they are not. As explained by the committee report accompanying the version of section 331(a)(1) included in the Revenue Act of 1924 (S. Rept. No. 398, 68th Cong., 1st Sess. (1924), 1939–1 C.B. (Part 2) 274):

A liquidating dividend is, in effect, a sale by the stockholder of his stock to the corporation; he surrenders his interest in the corporation and receives money in place thereof. Treating such a transaction as a sale and within the capital gain provisions is consistent with the entire theory of the Act and, furthermore, is the only method of treating such distributions which can be easily administered.[6]

---

[5] SEC. 6037. RETURN OF ELECTING SMALL BUSINESS CORPORATION.

Every electing small business corporation (as defined in section 1371(a)(2)) shall make a return for each taxable year, stating specifically the items of its gross income and the deductions allowable by subtitle A, the names and addresses of all persons owning stock in the corporation at any time during the taxable year, the number of shares of stock owned by each shareholder at all times during the taxable year, the amount of money and other property distributed by the corporation during the taxable year to each shareholder, the date of each such distribution, and such other information, for the purpose of carrying out the provisions of subchapter S of chapter 1, as the Secretary or his delegate may by forms and regulations prescribe. Any return filed pursuant to this section shall, for purposes of chapter 66 (relating to limitations), be treated as a return filed by the corporation under section 6012.

[6] To the same effect concerning the Revenue Act of 1918 counterpart of sec. 331(a)(1), see *Langstaff v. Lucas*, 9 F. 2d 691, 694 (W.D. Ky. 1925), affirmed per curiam 13 F. 2d 1022 (C.A. 6, 1926), certiorari denied 273 U.S. 721 (1926), and *Hellmich v. Hellman*, 276 U.S. 233 (1928).

See also Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders 338 (2d ed. 1966).

We find no provision in subchapter S that is inconsistent with this construction of section 331(a)(1). In determining the effect of the liquidation of Chief Pontiac on petitioner's taxable income, section 331(a)(1) obviously must be applied; and there is nothing in subchapter S to indicate that the gains referred to in section 1372(e)(5) are any different from the gains includable in petitioner's taxable income from Chief Pontiac's liquidation, or that the calculation thereof is to be made in any different manner. Hence, there is no alternative, particularly in view of regulations section 1.1372–1(c) referred to above, to following the command of section 331(a)(1) that the distributions in complete liquidation of Chief Pontiac be treated as amounts received by petitioner in exchange for its stock. When this is done, petitioner's rent, interest, and gains from exchanges of stock exceed 20 percent of its gross receipts. We hold, therefore, that petitioner's subchapter S election terminated in 1962.[7]

This holding coincides with the legislative purpose of section 1372(e)(5), which was to restrict the use of subchapter S to corporations having substantial amounts of operating, as opposed to investment or passive, income. *Buhler Mortgage Co.*, 51 T.C. 971 (1969); *Bramlette Building Corp.*, 52 T.C. 200 (1969); *Max Feingold*, 49 T.C. 461, 463 (1968); cf. H. Rept. No. 1238, to accompany H.R. 9883 (Pub. L. 89–389), 89th Cong., 2d Sess., p. 8 (1966); S. Rept. No. 1007, 89th Cong., 2d Sess. (1966), 1966–1 C.B. 532; Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders 718 (2d ed. 1966). The committee report accompanying the section refers to "interest, dividends, rents, royalties, or *other forms of passive income.*" (Emphasis added.) S. Rept. No. 1983, 85th Cong., 2d Sess. (1958), 1958–3 C.B. 1010. Chief Pontiac's operations were not shown to be related to petitioner's business operations. Petitioner's gains from the liquidation of Chief Pontiac thus were obviously related to its investments rather than to the operation of its radio station WILS, and clearly fall within the broad concept of "passive investment income."

Petitioner points out that section 1.1372–4(b)(5)(x), Income Tax Regs., defining gross receipts from the sale or exchange of stock or securities, incorporates by reference the definition of "stock or

---

[7] Petitioner pleads with great skill that such a holding will produce harsh results because the net gains from the liquidation of Chief Pontiac were all distributed in cash to petitioner's shareholders in each of the years 1962 and 1963. We recognize that the result is harsh. We are constrained, however, to reach our holding in the light of what in fact was done, rather than the parties' hopes and expectations as to the tax treatment of their conduct. *Temple N. Joyce*, 42 T.C. 628, 636 (1964).

securities" contained in the third sentence of regulations section 1.543-1(b) (5) (i),[8] but does not incorporate the second sentence of that subparagraph. This latter sentence provides, in substance, that for the purposes of section 543, gains from the sale or exchange of stock and securities include liquidating distributions. The import of this omission from the regulations interpreting section 1372(e) (5), petitioner would have us hold, is that even though gain from the exchange of stock was intended to encompass liquidating dividends for the purposes of the personal holding company tax, it was not so intended for the purposes of section 1372(e) (5). Otherwise, the argument goes, the regulations interpreting section 1372(e) (5) would have incorporated the second as well as the third sentence of section 1.543-1(b) (5) (i) of the regulations.

The short answer to petitioner's contention is that such incorporation was not necessary because, as discussed above, the language of section 1372(e) (5)—"sales or exchanges of stock"—is broad enough to include liquidating distributions. The second sentence of regulations section 1.543-1(b) (5) (i) was originally promulgated when the statute referred only to the "sale" of stock, and was retained after the statute was amended to refer to the "sale or exchange" of stock apparently because of the peculiar history of the problem. Indeed, that history confirms our conclusion.

Section 351(b) (1) (A) of the Revenue Act of 1934 defined personal holding company income to include "gains from the sale of stock," but the predecessor of regulations section 1.543-1(b) (5) (i) interpreted the statute to apply "to all gains (including gains from liquidating dividends and other distributions from capital) from the sale or exchange of stock or securities." Art. 351-2, Regs. 86. In *Helvering* v. *Rebsamen Motors*, 128 F. 2d 584 (C.A. 8, 1942), affirming 44 B.T.A.

---

[8] Sec. 1.543-1   Personal holding company income.
(b) *Definitions*—* * *

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(5) *Gains from the sale or exchange of stock or securities.* (i) Except in the case of regular dealers in stocks or securities as provided in subdivision (ii) of this subparagraph, gross income and personal holding company income include the amount by which the gains exceed the losses from the sale or exchange of stock or securities. See section 543(b)(1) and § 1.543-2 for provisions relating to this limitation. For this purpose, there shall be taken into account all those gains includible in gross income (including gains from liquidating dividends and other distributions from capital) and all those losses deductible from gross income which are considered under chapter 1 of the Code to be gains or losses from the sale or exchange of stock or securities. The term "stock or securities" as used in section 543(a) (2) and this subparagraph includes shares or certificates of stock, stock rights or warrants, or interest in any corporation (including any joint stock company, insurance company, association, or other organization classified as a corporation by the Code, certificates of interest or participation in any profit-sharing agreement, or in any oil, gas, or other mineral property, or lease, collateral trust certificates, voting trust certificates, bonds, debentures, certificates of indebtedness, notes, car trust certificates, bills of exchange, obligations issued by or on behalf of a State, Territory, or political subdivision thereof.

36 (1941), where the issue was whether liquidating distributions were personal holding company income, the court held that the regulation went beyond the statute in construing "sale" to mean "sale or exchange" and was, therefore, invalid. Contra, *Helvering* v. *Syndicate Varieties*, 140 F. 2d 344 (C.A. D.C. 1944), reversing a Memorandum Opinion of the Board of Tax Appeals; see *Commissioner* v. *Callahan Realty Corp.*, 143 F. 2d 214 (C.A. 2, 1944), affirming a Memorandum Opinion of this Court. The court's reasoning in *Rebsamen Motors* was that although the phrase "sale or exchange" was broad enough to encompass a liquidating distribution, the word "sale" was not. Furthermore, section 1 of the Revenue Act of 1937, 50 Stat. 814, amended section 351(b)(1)(A) of the 1934 Act, by substituting the phrase "sale or exchange" for the word "sale"; the change was described as a clarifying amendment. H. Rept. No. 1546, 75th Cong., 1st Sess. (1937), 1939–1 C.B. (Part 2) 706. The regulation remained substantially unchanged, and apparently has been retained merely to avoid any implication that the Commissioner has receded from his original interpretation of the section.

*Decision will be entered for the respondent.*