ALBERT A. GREENE AND MARGARET L. GREENE, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5972–77, 5973–77, 5975–77—5979–77,     Filed July 11, 1978.
5982–77, 5983–77, 5988–77, 6187–77.

*John J. Vassen,* for the petitioners.
*David T. Karzon, Jr.,* for the respondent.

OPINION

BRUCE, *Judge:* Respondent determined deficiencies in the Federal income taxes of the petitioners in these consolidated cases as follows:

[1]The following cases have been consolidated herewith for purposes of trial, briefing, and opinion: Wendell W. Wright and Zona M. Wright, docket No. 5973–77; Marion E. Wright and Sharon A. Wright, docket No. 5975–77; Sophie E. Schendel, docket No. 5976–77; Bazil T. Geckler and Louise G. Geckler, docket No. 5977–77; Harold N. O'Neil and Catherine O'Neil, docket No. 5978–77; Donald L. Huckaba and Marilyn E. Huckaba, docket No. 5979–77; Wilbur A. Busing and Julia A. Busing, docket No. 5982–77; Wendell W. Wright, docket No. 5983–77; Bernard W. Cooper and Rita A. Cooper, docket No. 5988–77; Armada J. White, docket No. 6187–77.

| Docket No. | Year | Deficiency |
|---|---|---|
| 5972–77 | 1973 | $2,437.00 |
|  | 1974 | 8,088.00 |
| 5973–77 | 1973 | 10,582.19 |
|  | 1974 | 1,131.97 |
| 5975–77 | 1971 | 1,116.31 |
|  | 1972 | 3,697.65 |
|  | 1973 | 4,580.57 |
|  | 1974 | 7,984.43 |
| 5976–77 | 1973 | 1,402.12 |
| 5977–77 | 1972 | 3,899.08 |
|  | 1973 | 8,649.55 |
|  | 1974 | 13,784.29 |
| 5978–77 | 1971 | 10,989.00 |
|  | 1972 | 7,352.00 |
|  | 1973 | 13,882.00 |
|  | 1974 | 1,329.00 |
| 5979–77 | 1971 | 1,212.00 |
|  | 1972 | 6,462.00 |
|  | 1973 | 9,328.00 |
|  | 1974 | 8,843.00 |
| 5982–77 | 1973 | 3,790.00 |
|  | 1974 | 13,947.00 |
| 5983–77 | 1972 | 4,075.91 |
| 5988–77 | 1972 | 470.00 |
|  | 1973 | 4,290.00 |
|  | 1974 | 4,974.00 |
| 6187–77 | 1972 | 892.54 |
|  | 1973 | 2,761.25 |
|  | 1974 | 7,483.00 |

On March 28, 1978, the parties filed a joint motion for partial summary judgment pursuant to Rule 121, Tax Court Rules of Practice and Procedure. On the same date, the parties filed a stipulation of facts with attached exhibits which they agree

provides the Court with all of the facts necessary to rule upon the motion.[2]

The sole issue under the motion is whether the election of S. Ward White Motor Inn, Inc. (hereinafter referred to as the corporation), to be treated as a small business corporation under subchapter S of the Internal Revenue Code of 1954 was terminated pursuant to section 1372(e)(5)[3] for the year 1972 and subsequent years.

Petitioners Albert A. Greene and Margaret L. Greene, Wendell W. Wright and Zona M. Wright, Marion E. Wright and Sharon A. Wright, Bazil T. Geckler and Louise G. Geckler, Harold N. O'Neil and Catherine O'Neil, Donald L. Huckaba and Marilyn E. Huckaba, Wilbur A. Busing and Julia A. Busing, and Bernard W. Cooper and Rita A. Cooper, husbands and wives, and Sophie E. Schendel, Wendell W. Wright, and Armada J. White, individuals, resided in Danville, Ill., at the time they filed their petitions in these cases and also at the time they filed their respective Federal income tax returns, and in some instances amended returns, with the Midwest Service Center in Kansas City, Mo.

S. Ward White Motor Inn, Inc. d.b.a. Danville Sheraton Motor Inn, was formed on November 3, 1971, under the laws of the State of Illinois, for the purpose of constructing and operating a motel, under a Sheraton franchise, in Danville, Ill. The same day the corporation filed an election to be treated as a small business corporation pursuant to the provisions of subchapter S of the Internal Revenue Code of 1954.

For its calendar years 1972 and 1973 the corporation reported gross income and expenses as follows:

---

[2]All of the adjustments made in the statutory notices of deficiencies issued to petitioners, other than the ones giving rise to the issue presented under the motion and to an alternative issue as to the correct amount of the corporation's losses distributable to each petitioner for 1972, 1973, and 1974, either have not been placed in issue by the pleadings or have been conceded in full by the respective petitioners. As a result, if the motion for partial summary judgment is granted in favor of respondent, no further proceedings in this matter will be necessary.

[3]Unless otherwise noted, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.

|  | 1972 | 1973 |
|---|---|---|
| Interest | $747.11 | $3,532 |
| Gross rents | 13,347.32 | 6,742 |
| Miscellaneous | 0 | 360 |
| Gross income | 14,094.43 | 10,634 |
| Total deductions | 90,502.80 | 179,177 |
| Loss | 76,408.37 | 168,543 |

The corporation's interest income for 1972 and 1973 was derived from bank certificates of deposit that were purchased with mortgage loan proceeds, shareholder capital contributions, and shareholder loans to the corporation which were not immediately needed for payment of expenses and construction costs incurred with respect to the motel building and other facilities. The corporation's rental income for 1972 and 1973 was received from the occupants of single- and multi-family dwellings located on the land which was to be the site of the motel. This land was acquired under conditions which permitted those persons residing in the dwellings to remain until the motel construction had progressed to a point which required removal of the dwellings.

Each of the petitioners owned (or filed a joint return with one who owned) varying amounts of stock in the corporation during 1972, 1973, and/or 1974. For those years in which each shareholder-petitioner was a shareholder in the corporation, he deducted or reported on his own Federal income tax return his respective portion of the corporation's losses and investment tax credit (except for Wendell W. and Zona M. Wright) as reported on the corporation's tax returns. Respondent disallowed the items claimed by petitioners as "pass through" items from the corporation because of his determination that the corporation's subchapter S status terminated for 1972 and subsequent years, pursuant to section 1372(e)(5), as a result of its having had passive investment income of more than $3,000 in 1972 and 1973, which amount exceeded 20 percent of its gross receipts in each year.

Section 1372(e)(5) provides that, except in the first or second taxable year in which a corporation commences the active conduct of any trade or business,[4] its election to be treated as a

---

[4] The exception mentioned here is set forth in subpar. (B) and further requires that passive

small business corporation under subchapter S will terminate if it has gross receipts more than 20 percent of which is passive investment income. Subparagraph (C) defines "passive investment income" for purposes of section 1372(e)(5) to include gross receipts derived from rents and interest. Respondent has further defined, by regulation, the term "gross receipts" in pertinent part as follows: "The term 'gross receipts' means the total amount received or accrued under the method of accounting used by the corporation in computing its taxable income. Thus, the total amount of receipts is not reduced by returns and allowances, cost, or deductions." Sec. 1.1372–4(b)(5)(iv)(a), Income Tax Regs. Although the parties agree that the corporation accurately computed the amounts of interest and gross rents that it reported as income on its return for 1972, they differ on the proper characterization of those items for purposes of section 1372.

Respondent's affirmative position may be simply stated. In computing its taxable income for 1972, the corporation accurately reported interest and gross rents in an amount greater than $3,000, which amount also constituted 100 percent of its gross receipts for the year. Gross receipts of interest and rents constituting prohibited "passive investment income" pursuant to the provisions of section 1372(e)(5), the corporation's election to be treated as a small business corporation under subchapter S was involuntarily terminated.

Petitioners maintain, however, that the corporation improperly reported income from interest and rents. It is their position that under the method of accounting used by the corporation in computing its taxable income, during the construction period of the motel facilities, the interest income reported should have been offset against interest expense (thereby reducing total construction costs) and the gross rents reported constituted "proceeds from demolition" which should have been used to

investment income for such taxable year be less than $3,000. The exception becomes significant in this case only if we hold for petitioners on the question concerning the rents and for respondent on the question concerning the interest. This is true because the corporation's gross rents exceeded $3,000 in both 1972 and 1973, but its interest income was less than $3,000 in 1972. The potential applicability of this exception probably explains why respondent made his determinations with regard to the corporation's subch. S status in terms concerning both the taxable years 1972 and 1973. In light of an ultimate conclusion, for convenience, we shall hereinafter in our discussion refer only to the taxable year 1972.

reduce the corporation's basis in the property on which the rental dwellings were located. See sec. 1.165–3(a)(1), Income Tax Regs. The conclusion they seek is that the corporation had no "gross receipts" qualifying as "passive investment income" in 1972. Petitioners further argue that Congress did not intend for the type of interest and rental income received by the corporation to be considered "passive investment income" for purposes of section 1372(e)(5).

In addition to section 1.1372–4(b)(iv)(a), Income Tax Regs., quoted in pertinent part above, respondent counters petitioners' arguments relying primarily upon *Osborne v. Commissioner*, 55 T.C. 329 (1970), and *Llewellyn v. Commissioner*, 70 T.C. 370 (1978).

In *Osborne* the alleged subchapter S corporation was organized for the purpose of building and operating a shopping center. In order to obtain an access way desired by the corporation, it purchased four residential lots, two of which contained occupied dwellings. At the time of acquisition, the corporation intended to raze the two houses and construct an access road. Because of a construction delay, the corporation did not raze the houses as intended but, rather, allowed the occupants to rent them. The taxpayers conceded that the corporation's receipt of rents exceeded 20 percent of its gross receipts in the pertinent years,[5] but argued that to deny the corporation subchapter S status where the construction delay prevented it from commencing business would be a result contrary to congressional intent. In light of the unequivocal statutory language, we were unable to accept the petitioners' view and concluded that the corporation's election to be treated as a small business corporation under subchapter S was terminated.

Petitioners submit that *Osborne* is not controlling here, despite the factual similarity, because the arguments advanced by them concerning capitalization of demolition costs were not argued nor considered by the Court in that case. Petitioners' point appears well taken, particularly in view of the fact that the taxpayers in *Osborne* conceded that their corporation's gross receipts from rents exceeded 20 percent of its total gross

---

[5]We note for completeness that the exception contained in sec. 1372(e)(5)(B) was not in effect during the taxable years in issue in *Osborne*. See n. 4 *supra*.

receipts, and we believe petitioners' attempt to distinguish *Osborne* here has merit.[6]

It is petitioners' principal position that because the corporation intended, at the time of purchase, to demolish the rental dwellings it acquired, the entire purchase price was allocable to the land. Such basis should then be increased by the net cost of demolition or reduced by the net proceeds from demolition. Sec. 1.165–3(a)(1), Income Tax Regs.[7] Petitioners' hope for success in this case depends, in the first instance, upon the validity of their contention that the rentals received by the corporation prior to the actual demolition of the dwellings constituted "proceeds from demolition" which, properly accounted for, would enter into the basis adjustment described above.

There appears to be an absolute want of authority on the question of what constitutes proceeds from demolition within the meaning of the regulation. Petitioners have simply stated their contention and made no effort to guide us to persuasive authority. Respondent merely describes petitioners' position as being "totally without merit" and warns that our adoption of petitioners' theory would introduce "a wholly unwarranted tax loophole." Although we are hesitant to endorse respondent's characterization of petitioner's position, because it does contain a thin thread of logic, we agree that it cannot prevail.

The concept underlying section 1.165–3(a)(1), Income Tax Regs., is that a purchaser suffers no loss from the demolition of buildings when he acquires real property with the intention of demolishing the buildings situated thereon. The entire purchase price is deemed to be the value he is in fact willing to pay for the land. See *Hillside National Bank v. Commissioner*, 35 T.C. 879 (1961). Similarly, additional costs incurred to remove the buildings represent further value to the purchaser of the land alone. The reduction in basis for the proceeds from demolition is

---

[6]However, we do find *Osborne* persuasive with respect to petitioners' argument concerning "congressional intent," and we reject that argument without further comment.

[7]Sec. 1.165–3, Income Tax Regs. Demolition of buildings. (a) *Intent to demolish formed at time of purchase*. (1) Except as provided in subparagraph (2) of this paragraph, the following rule shall apply when, in the course of a trade or business or in a transaction entered into for profit, real property is purchased with the intention of demolishing either immediately or subsequently the buildings situated thereon: No deduction shall be allowed under section 165(a) on account of the demolition of the old buildings even though any demolition originally planned is subsequently deferred or abandoned. The entire basis of the property so purchased shall, notwithstanding the provisions of sec. 1.167(a)–5, be allocated to the land only. Such basis shall be increased by the net cost of demolition or decreased by the net proceeds from demolition.

a concession, of sorts, that the aforedescribed theory is not cast in stone and that the buildings did in fact have some value to the purchaser, i.e., whatever salvage value the buildings had. Income derived from and expenses connected with the use of the buildings prior to their destruction do not fit, however, into the above scheme. Such income and expenses are at least one step removed from the situation with which section 1.165–3(a)(1), Income Tax Regs., is designed to deal, i.e., the allocation of cost basis between land and buildings. In recognition of this latter fact, section 1.165–3(a)(2), Income Tax Regs., provides for the allocation of basis to the buildings in instances where, despite the intent to demolish at the time of purchase, they are used in a trade or business or held for the production of income prior to their demolition. Thus, that the corporation may have acquired the rental dwellings with the intent to demolish them and that it may not have claimed depreciation on them during 1972 and 1973 does not justify characterization of the rental income it derived from their use as "proceeds from demolition."

Our conclusion on this question obviates a decision as to whether, even if they were properly characterized as proceeds from demolition, the rents would still constitute "gross receipts" within the meaning of section 1372(e)(5). Similarly, we need not reach petitioners' argument concerning the netting of interest income and interest expense during the construction period. But see *Llewellyn v. Commissioner*, 70 T.C. 370 (1978), where we rejected a similar if not identical argument. Petitioners having advanced no meritorious grounds for deciding that the corporation's gross rentals in 1972 did not constitute passive investment income within the intendment of section 1372(e)(5), we conclude that the corporation's election to be treated as a small business corporation under subchapter S was terminated in that year.

*Appropriate orders will be issued.*