Frank X. Kilgannon and Susan Kilgannon v. Commissioner. Owen L. Kilgannon and Wendy A. Kilgannon v. Commissioner.
Kilgannon v. Commissioner
Docket Nos. 1680-69 and 1681-69.
United States Tax Court
T.C. Memo 1971-325; 1971 Tax Ct. Memo LEXIS 6; 30 T.C.M. (CCH) 1416; T.C.M. (RIA) 71325; December 27, 1971, Filed. Frank X. Kilgannon, pro se, 105 Nassau Blvd., West Hempstead, N. Y., and Owen L. Kilgannon, pro se, 1080 Mereich Rd., Massapequa, N. Y. Michael A. Menillo, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in the income taxes of Frank X. Kilgannon and Susan Kilgannon for the calendar years *8 1965 and 1966 in the amounts of $1,001.30 and $794, respectively, and determined deficiencies in the income taxes of Owen L. Kilgannon and Wendy A. Kilgannon for the calendar years 1965 and 1966 in the amounts of $313.97 and $164.27, respectively. The issues for decision are: (1) Whether petitioners are entitled to an investment credit under section 38, I.R.C. 1417 1954, [1] with respect to the investment of a partnership of which they were members in certain depreciable furniture and fixtures located in apartments rented by the partnership. (2) Whether the bases of the partnership for depreciation in the furniture and fixtures located in the various apartments are in excess of the amounts determined by respondent. (3) Whether petitioners are entitled to compute the depreciation with respect to the furniture and fixtures on a declining balance basis these properties having been acquired by petitioners after they had been used by a predecessor owner. (4) Whether the fact that the internal revenue agent who was investigating the partnership returns for the years here in issue resigned prior to completing his *9 examination and the examination was continued by a different agent who examined some of the same documents which had been examined by the first agent constituted a second examination in violation of section 7605(b). Findings of Fact Some of the facts have been stipulated and are found accordingly. Frank X. Kilgannon and Susan Kilgannon, husband and wife, resided in West Hempstead, New York at the time of the filing of their petition in this case. They filed joint Federal income tax returns for the calendar years 1965 and 1966 with the district director of internal revenue, Brooklyn, New York. Owen L. Kilgannon and Wendy A. Kilgannon, husband and wife, resided in Massapequa, New York at the time of the filing of their petition in this case. They filed joint Federal income tax returns for the calendar years 1965 and 1966 with the district director of internal revenue, Brooklyn, New York. Frank X. Kilgannon (hereinafter referred to as Frank) and Owen L. Kilgannon (hereinafter referred to as Owen) are brothers and during the years here in issue were partners in the partnership of Kilgannon and Kilgannon. This partnership filed a U.SS Partnership Return of Income, form 1065, for *10 each of the calendar years 1965 and 1966. Prior to March of 1965 Frank was living in the ground floor or basement apartment at 105 Nassau Boulevard, West Hempstead, New York. The landlord informed him that he planned to sell the building and Frank and Owen decided to purchase it for their partnership. Prior to the time this property was purchased by the partnership, the owner of the building had been living on the first floor and another tenant was living on the second floor of the building. In March 1965 the Kilgannon partnership purchased the 105 Nassau Boulevard property for $30,000. The purchase price of the property included the land and building and all fixtures and articles of personal property attached or appurtenant to or used in connection with the premises including such fixtures and articles of personal property as plumbing, heating, lighting and cooking fixtures, carpeting in two bedrooms and living room, bathroom and kitchen cabinets, and a glass tub enclosure on the first floor. Shortly after purchasing the 105 Nassau Boulevard property, Frank and Owen did, with their personal labor, renovation work in the upstairs apartment and the main floor apartment, and some *11 work in the basement apartment in which Frank continued to live. Frank had been paying $130 a month rent to the prior landlord for the basement apartment and he continued to pay that to the partnership for the apartment. The partnership rented to other persons the other two apartments in the building. In connection with the renovation and improvement of the 105 Nassau Boulevard property the partnership placed wall to wall carpeting in part of the apartment on the main floor at a cost of $100, a hot water heater in the basement at a cost of $175, a stove in the basement apartment at a cost of $100, and tile flooring in the basement at a cost of $75. In 1955 Frank and Owen acquired for the partnership a two-family house at 21 Bond Lane, Hicksville, New York at a cost of $18,000. Included in the purchase price of $18,000 were all fixtures and articles of personal property attached or appurtenant to or used in connection with the premises, including plumbing, heating, lighting and cooking fixtures, one range, one refrigerator, television aerial, bathroom and kitchen cabinets, venetian blinds, screens, storm windows, and storm doors. After acquiring this property the partnership did certain *12 renovations to the property. A stove was placed in the upstairs apartment, which apartment was a furnished apartment. This stove cost $250. A refrigerator was also placed in this 1418 apartment at a cost of $100. Electrical fixtures were placed in the upstairs apartment at a cost of $250. The partnership rented both of the apartments in the 21 Bond Lane property. Also, in 1966, Frank and Owen acquired for the partnership a one-family house located at 160 Andover Place, West Hempstead, New York. The purchase price of this property was $19,500. This property was in a somewhat rundown condition and the partnership made substantial improvements, primarily to the kitchen, shortly after acquiring the property. The cost of the cabinets and similar type improvements in the kitchen was $2,000 and the partnership placed a refrigerator which cost $200 and a stove which cost $225 in the kitchen. In connection with the improvements and renovations at 21 Bond Lane, the physical work was done primarily by Frank and Owen. While Frank lived in the apartment at 105 Nassau Boulevard he personally mowed the lawn and placed the garbage out for collection and did the ordinary services usually furnished *13 either individually or through an employed person by a landlord in connection with rental of property. The partnership on its U.S. Partnership Return of Income for the year 1965 claimed depreciation as follows: Depreciation
allowed
or
Description
allowable
of
Cost or
Date
in prior
property
other basis
acquired
years
Building
$20,424.50
1965
None
Furniture and fixtures
8,028.00
1965
None
Totals
$28,452.50
Method
Class life
Description
of com-
or rate
depreciation
of
puting
(percent)
for
property
depreciation
or life
this year
Building
DDB
20 yr.
$1,532.00
Furniture and fixtures
DDB
8 yr.
2,810.00
Totals
$4,342.00
On the U.S. Partnership Return of Income for the year 1966, the partnership claimed depreciation as follows: Depreciation
allowed
or
Description
allowable
of
Cost or
Date
in prior
property
other basis
acquired
years
Building
$20,424
1965
$1,532
Building
15,443
1966
None
Building
12,574
1966
None
Furniture and fixtures
18,028
1965-66
2,810
Totals
$66,469
Method
Class life
Description
of com-
or rate
depreciation
of
puting
(percent)
for
property
depreciation
or life
this year
Building
DDB
20 yr.
$1,417
Building
S.L.
20 yr.
386 (1/2 yr.)
Building
S.L.
20 yr.
315 (1/2 yr.)
Furniture and fixtures
Var.
Var.
1,478
Totals
$3,596
*14 Frank and Owen estimated the value of the furniture and fixtures purchased with the various buildings and the value of the land. The value of the buildings was determined by subtracting from the total purchase price of each property the sum of the estimated value of the land and the furniture and fixtures. To their estimate of the value of the furniture and fixtures acquired with the purchase of the buildings, Frank and Owen added the cost of their purchases for the apartments and improvements to the building to the value of the furniture and fixtures. By their method, they arrived at the following basis for the buildings, land and furniture and fixtures: Furniture
and
Property
Building
Land
fixtures
105 Nassau Boulevard
$20,425
$2,000
$8,028
21 Bond Lane
12,574
1,500
5,000
160 Andover Place
15,443
1,500
5,000 On the partnership return for 1965, after claiming the deduction set forth therein for depreciation, a net loss of $3,577.39 was reported, and for the year 1966 a net loss of $3,380 was reported. Frank, on his joint income tax return with his wife for the years 1965 and 1966 claimed investment tax credits in the amounts of *15 $420 and $525, respectively, with respect to the furniture and fixtures in the apartments rented by the partnership. 1419 Owen, on his joint income tax returns with his wife for the years 1965 and 1966, claimed investment tax credit with respect to these same furniture and fixtures owned by the partnership limited by the total amount of tax otherwise payable in the amounts of $60.72 and $175, respectively. Respondent in his notices of deficiency to Frank and to Owen reduced the claimed partnership losses for the years 1965 and 1966 by the amounts of $3,161.86 and $780.40, respectively, because of a reduction in the amount of depreciation claimed by the partnership and the disallowance of the use of the double declining balance method of computing depreciation. Respondent in making the adjustment, allocated the cost of the various properties to the building, land, and furniture and fixtures as follows: 105 Nassau Boulevard
Building
$26,407
Land
3,045
Furniture and fixtures
1,000
21 Bond Lane
Building
14,831
Land
3,066
Furniture and fixtures
1,000
160 Andover Place
Building
15,990
Land
2,853
Furniture and fixtures
2,100
(Improvements
$1,000)
*16 Respondent also disallowed the investment credit claimed by each of the petitioners. The agent who started the investigation of petitioners' tax liability for the years here in issue had not completed his work with respect to the partnership returns or notified petitioners of the result of his investigation at the time he resigned from the service. The completion of this investigation was assigned to another agent who went over some of the same records of the partnership which had been examined by the other agent. Opinion Section 38 provides for the allowance as a credit against a taxpayer's income tax an amount to be determined as set forth in sections 46, 47, 48, and 49 for investment in certain depreciable property referred to in the other sections as "section 38" property. Section 48(a) [2] defines section 38 property as tangible personal property, or other tangible property (not including a building and its structural components) but only if such property is used for certain specific purposes. Section 48(a)(3) specifically provides that property used for lodging shall not be treated as section 38 property but that this provision shall not apply to property used by a hotel *17 or motel in connection with the trade or business of furnishing lodging where the predominant portion of the accommodations is used by transients. *18 The rental property of the partnership was clearly property used for lodging and as such is not within the definition of section 38 property. Petitioners do not explain why they consider that they might be entitled to the investment credit deduction with respect to the furniture and fixtures in the apartments they rented to others if they personally rendered substantial services to the tenants of the buildings. We might speculate that they had in mind that such services would make the property comparable to property used by a hotel or motel. However, even if they had rendered services of a nature rendered by a hotel or a motel, they would not fall within the exception because the apartments were rented on a relatively permanent basis and no portion, insofar as this record shows, was used as an accommodation by a transient. In any event there is nothing in this record to 1420 indicate that the services rendered by petitioners in connection with their rented property was substantial or significant. See Max Feingold, 49 T.C. 461 (1968), and Bramlette Building Corporation v. Commissioner, 424 F. 2d 751 (C.A. 5, 1970), affirming 52 T.C. 200. *19 We therefore sustain respondent in his disallowance to the petitioners of their claimed investment credit. Petitioners' allocation of the price paid for the land, building, and the furniture and fixtures contained therein, except for the items added which we will discuss hereafter, is purely their estimate of the fair market value of the land and of the furniture and fixtures. We were not impressed by these estimates. However, even if we did consider either Frank or Owen competent to estimate the fair market value of the furniture and fixtures and the land, we would not sustain their allocation since there is no showing that the building itself would not have a fair market value far in excess of the remaining value apportioned to it. In other words petitioner may have gotten a bargain purchase as compared to the fair market value of the property. Therefore, petitioners' method of allocation is incorrect. From the description of the items in the houses, in our view, petitioners far over-estimated the value of the furniture and fixtures. There is nothing in the record to support petitioners' valuation of the land. However, from the record as a whole, it is our opinion that respondent, *20 in determining the value of the furniture and fixtures for depreciation purposes at 105 Nassau Boulevard and 21 Bond Lane to be $1,000 each was estimating the furniture and fixtures in the houses as purchased. This is supported not only by testimony of petitioners but also by the stipulated exhibit which shows a separate designation used by respondent for improvements at 160 Andover Place. For this reason we conclude that respondent incorrectly failed to include in furniture and fixtures the added items in the amount of $450 at 105 Nassau Boulevard and in the amount of $600 at 21 Bond Lane. We therefore hold that the basis for depreciation of the furniture and fixtures at 105 Nassau Boulevard should be $1,450 and at 21 Bond Lane should be $1,600. On the basis of the record we further conclude that respondent's valuation of the buildings should in each instance be reduced by the added amounts to the value of the furniture and fixtures. We accept respondent's valuation of the land. With respect to 160 Andover Place, respondent did put a separate $2,100 valuation on the kitchen improvements. However, the record supports a valuation of these items of $2,425. Likewise in our view *21 the extra $325 added to the furniture and fixtures valuation should be a reduction in respondent's allocation to the building. We also agree with respondent that petitioners are not entitled to use the declining balance method of computing depreciation. Section 167 which provides for depreciation allows various methods for computing depreciation, one of which, section 167(b)(2), is the declining balance method, using a rate not exceeding twice the rate which would have been used had the annual allowance been computed under the straigtline method. However, section 167(c) provides that this method shall apply only in the case of property, the construction of which is completed after December 31, 1953, or acquired after December 31, 1953, if the original use of such property commences with the taxpayer and commences after such date. [3]
*22 Section 1.167(c)-(a)(2), Income Tax Regs., provides that if the property was not constructed by the taxpayer, the declining balance method applies only if it was acquired after December 31, 1953 and "if the original use of the property commences with the taxpayer." This regulation further provides that the term "original use" means the first use to which the property is put whether or not such use corresponds to the use of such property by the taxpayer. There is nothing in this record to show when the properties acquired by the partnership were constructed and the record clearly shows that the original use of most 1421 of these properties was not by the partnership. There is nothing in the record to show with respect to the added items that they were not used when acquired. Section 1.167(b)-1(a), Income Tax Regs., provides that the straight-line method of depreciation "shall be used in all cases where the taxpayer has not adopted a different acceptable method with respect to such property." Since the double declining balance method used by the partnership is not an acceptable method and the partnership has shown no other proper method, cf. Silver Queen Motel, 55 T.C. 1101 (1971); *23 Robert M. Foley, 56 T.C. 765 (1971), for the property here involved, the respondent was not in error in requiring the partnership to use the straight-line method of depreciation. Petitioners contend that they were subjected to a second examination of their books in violation of section 7605(b). It is not clear whether petitioners are pursuing this argument or what they contend the result should be if they were subjected to a second examination. However, this record is completely clear that petitioners were not subjected to a second examination. Owen testified that the partnership returns were being investigated by one agent who did not complete the examination and notify him with respect to the result. Owen called the district director's office and was informed that the agent who had been investigating the partnership returns had resigned and another agent would be out to complete the investigation. Another agent did come out and complete the investigation and petitioners were notified as to the results of the completed investigation. Since this was clearly not a case of a second investigation in violation of section 7605(b), we do not consider this aspect of the case *24 of sufficient importance to warrant further discussion. Decisions will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
2. SEC. 48. DEFINITIONS; SPECIAL RULES. (a) Section 38 Property. - (1) In general. - Except as provided in this subsection, the term "section 38 property" means - (A) tangible personal property, or (B) other tangible property (not including a building and its structural components) but only if such property - (i) is used as an integral part of manufacturing, production, or extraction or of furnishing transportation, communications, electrical energy, gas, water, or sewage disposal services, or (ii) constitutes a research or storage facility used in connection with any of the activities referred to in clause (i), or (C) elevators and escalators, but only if - (i) the construction, reconstruction, or erection of the elevator or escalator is completed by the taxpayer after June 30, 1963. or (ii) the elevator or escalator is acquired after June 30, 1963, and the original use of such elevator or escalator commences with the taxpayer and commences after such date. Such term includes only property with respect to which depreciaton (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 4 years or more. * * * (3) Property used for lodging. - Property which is used predominantly to furnish lodging or in connection with the furnishing of lodging shall not be treated as section 38 property. The preceding sentence shall not apply to - (A) nonlodging commercial facilities which are available to persons not using the lodging facilities on the same basis as they are available to persons using the lodging facilities, and (B) property used by a hotel or motel in connection with the trade or business of furnishing lodging where the predominant portion of the accommodations is used by transients.↩
3. Sec. 167(c) Limitations on Use of Certain Methods and Rates. - Paragraphs (2), (3) and (4) of subsection (b) shall apply only in the case of property (other than intangible property) described in subsection (a) with a useful life of 3 years or more - (1) the construction, reconstruction, or erection of which is completed after December 31, 1953, and then only to that portion of the basis which is properly attributable to such construction, reconstruction, or erection after December 31, 1953, or (2) acquired after December 31, 1953, if the original use of such property commences with the taxpayer and commences after such date.↩